**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| HUGH FRENCH and MICHAEL EARLES, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DAVOL, INC., and C.R. BARD, INC.<br><br>Defendants. | ) | CASE NO.<br><br>COMPLAINT - CLASS ACTION<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, Hugh French and Michael Earles, by and through their attorneys, bring this action individually and on behalf of all others similarly situated, and for their Class Action Complaint (hereinafter "Complaint"), allege the following upon information and belief:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and the Class defined herein against C.R. Bard, Inc. ("Bard") and its wholly owned subsidiary, Davol, Inc., ("Davol"), for their sale and distribution of defective Composix Kugel Mesh Patches. The Defendants' defective product has been surgically implanted into the bodies of the Plaintiffs and the class members. The patches present, and will continue to present, a substantial risk of injury or death to the Plaintiffs and the Class Members. As a result, Plaintiffs and the class have been injured and will need continual and ongoing medical monitoring.

## PARTIES

2. Plaintiff Hugh French ("Mr. French") is an individual citizen and resident of the State of Tennessee During the relevant time period, Mr. French had hernia repair surgery which

included the implantation of a Composix Kugel Mesh Patch into his body. That patch remains in his body to date.

3. Plaintiff Michael Earles ("Mr. Earles") is an individual citizen and resident of the State of Tennessee During the relevant time period, Mr. Earles had hernia repair surgery which included the implantation of a Composix Kugel Mesh Patch into his body. That patch remains in his body to date.

4. Defendant Davol Inc. (hereinafter "Davol") is and was a wholly owned subsidiary of Bard, with its principal place of business at 100 Sockanosset Crossroads, P.O. Box 8500, Cranston, Rhode Island, 02920. At all times relevant, Davol was a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business for manufacturing hernia surgical repair products in Cranston, Rhode Island. Davol designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the State of Tennessee.

5. Defendant Bard is a New Jersey corporation with its principal office and place of business at 730 Central Avenue, Murray Hill, New Jersey, 07974, and at all times relevant designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors, physicians, hospitals and medical practitioners, certain hernia surgical repair products to be surgically implanted in patients throughout the United States, including the State of Tennessee. Additionally, Bard manufactures and supplies Davol with material that forms part of the Composix Kugel Mesh Patch.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over the Class pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005. Plaintiffs and each member of the putative Class have suffered aggregate damages exceeding five million dollars ($5,000,000), exclusive of interest and costs. There are members of the Class who are citizens of a different State than Defendants.

7. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a) because Plaintiffs reside in this judicial district and both Defendants earn substantial compensation and profits from its sales of the product in question in this district.

## GENERAL ALLEGATIONS

8. This class action involves the Composix Kugel Mesh Patch manufactured by Defendants between 2001 and January 2007. These Composix Kugel Mesh Patches were sold by Defendants for implantation in patients in the course of hernia repair surgery.

9. Upon information and belief, from 2004-2006 alone, Defendants had sales from their Surgical Specialties segment of business, which includes the Composix Kugel Mesh Patch, of roughly one billion dollars ($1,000,000,000).

10. A hernia is a protrusion of an organ or tissue through an abnormal opening in the body. Hernias occur when a piece of intestine slips through a weakness in the abdominal wall, creating a bulge you can see and feel. Hernias can develop around the navel, in the groin or any place where you may have had a surgical incision.

11. The Composix Kugel Mesh Patch was designed to fix the hernia by placing the patch on the inside of the abdominal wall, and therefore, the pressures of the body help to hold the patch in place over the hernia defect.

12. The Kugel Mesh line of products, invented by Dr. Robert D. Kugel, was first manufactured by Surgical Sense, Inc., starting in or around 1996. In January of 2000, Bard acquired the Kugel line of hernia repair products from Surgical Sense, Inc.

13. Defendants submitted their 510K Application for approval of the Composix Kugel Mesh Patch to the Federal Drug Administration (the "FDA") on January 22, 2001. Following the 510K Application, the patch was authorized by the FDA as a Class II medical device. Shortly thereafter, in 2001, Bard introduced the Composix Kugel Mesh Patch to the market through its wholly-owned subsidiary, Davol.

14. The Composix Kugel Mesh Patch is a two sided "dual mesh" prosthetic device developed to repair ventral (hernias of the abdominal region) and incisional hernias and was indicated by Defendants as an alternative to inguinal hernia repairs as well. The Composix Kugel Mesh Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision the mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds the mesh.

15. The two sides of the Composix Kugel Mesh Patch are composed of two very different materials; with two very different purposes. Basically, the patch has a 'sticky' side and a 'slick' side. The sticky side is designed to face the abdominal wall and is composed of a double layer of Marlex™(monofilament polypropylene or PPM). This fabric has a very high tissue ingrowth factor - essentially making it like an adhesive. The 'slick' side of the patch is intended to face the bowels and is composed of expanded Teflon (ePTFE). This expanded Teflon fabric has a very low tissue ingrowth factor and is designed to shield the soft tissue of the bowels and other organs from the "sticky" Marlex™ side of the Patch.

16. The inherently adhesive qualities of the Marlex side of the Composix Kugel Mesh Patch make it imperative that it never comes in contact with the bowels and other organs.

17. Due to the design and/or manufacturing defects present, this can occur when the mesh folds over on itself, the mesh wrinkles during placement or the mesh pulls away from the abdominal wall allowing bowel to loop and adhere to the ‘sticky’ side.

18. As a result, the mesh can: adhere (through tissue ingrowth) to vital organs and intestines; twist around the bowels and organs and cause strangulation and/or serious obstructions; cause necrosis of the organ tissue; become impossible to remove without also removing large portions of the bowel; develop infections; and lead to peritonitis, sepsis, organ shutdown and even death.

19. The plastic ‘memory recoil’ ring in the Composix Kugel Mesh Patch was intended as a way to maintain integrity of the shape of the patch, and in doing so, keep the ‘sticky’ side (Marlex™/PPM side) away from the sensitive organs and intestines.

20. Due to the design and/or manufacturing defects the memory recoil ring is prone to failure in several ways, including: pulling apart at the weld; breaking away from the weld; kinking, bending and folding directly across from the weld; and separating or tearing from patch material.

21. On information and belief, these defects and/or others were caused by multiple design and manufacturing errors and oversights, including but not limited to: failing to properly test the weld strength of the rings; failing to run strength tests on the larger size rings; sewing lines damaging the ring during the manufacturing process and causing it to splinter or fracture; mesh shifting during sewing resulting in a ‘shrunken’ pocket causing the ring to buckle; the weld joint being placed at an incorrect location in the patch; and poor design and technique instruction

by Defendants causing the physicians' staples and/or sutures to damage the ring during placement.

22. When the memory recoil ring malfunctions, numerous serious problems can occur, including:

a. the sharp/fractured PET plastic of the memory recoil ring can pierce the bowels or organs;

b. the ring can force its way through the abdominal wall and skin;

c. the ring can bend or break within the patch, causing it to lose its shape and forcing the "sticky" side onto the bowels and organs;

d. the ring can kink opposite the weld, pulling the patch away from the abdominal walls allowing the bowel to loop up and onto the "sticky" side;

e. the ring can slide upon itself within the patch, pulling the patch into a ball or causing it to pull away from the abdominal wall; AND

f. the ring and/or the patch can otherwise fail to perform as intended, represented and/or designed.

23. The resulting injuries and damages from this ring failure include: fistulae created by the perforation of the bowels and other organs; perforation of the abdominal wall and skin; internal bleeding and necrosis of tissue; strangulation and/or serious obstructions of the bowels and organs; recurrence of hernias and prolonged hospitalizations; the necessity of removing large portions of the bowel; infections; and can lead to peritonitis, sepsis, organ shutdown, and even death.

24. Immediately after the Composix Kugel Mesh Patches were placed on the market, Defendants began receiving actual notices of memory ring failures as well as injuries stemming from Composix Kugel Mesh Patch defects.

25. Defendants actively and intentionally concealed this notice of the defective and dangerous condition associated with the Composix Kugel Mesh Patches from Plaintiffs, Plaintiff's physicians, the FDA, members of the Class and the general public.

26. No later than 2003, Defendants uncovered serious problems with the weld process involving the memory recoil ring.

27. Despite attempts to correct the problem at the plant, Defendants found the corrective measures to be ineffective and the process still not in control.

28. Defendants were aware that these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. Even the little information disclosed to date was intentionally withheld from Plaintiffs, Plaintiffs' physicians, members of the Class, the FDA, and all other individuals who had been implanted or would be implanted with Composix Kugel Mesh Patches using the memory recoil ring.

29. As early as 2002, but after the defective and dangerous patch was already placed on the market, Defendants conducted physician screenings and reviews.

30. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time.

31. Whether intentionally or negligently, Defendants failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results.

32. These complaints and concerns of the physician surveyors were actively concealed by Defendants from Plaintiffs, Plaintiffs' surgeons, the FDA, members of the Class and the public at large.

33. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marked increase in the number of complaints with the Composix Kugel Mesh Patch.

34. In spite of their knowledge of increasing complaints and complications, Defendants waited until August 30, 2005 to initiate a partial Composix Kugel Mesh Patch *distribution* hold.

35. Even though Defendants realized the need for this distribution hold, they actively and intentionally chose not to immediately inform Plaintiffs, Plaintiffs' physicians, members of the Class, the FDA, and all other individuals who had been implanted or would be implanted with Composix Kugel Mesh Patches of the problems and/or defects.

36. Defendants have since admitted that the product quality hold and release procedure was not applied on a timely basis.

37. As a result of this dangerous and defective condition, and the numerous serious injuries that have resulted, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix Kugel Mesh Patch. A Class 1 recall is the highest level of recall available to the FDA. It is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

38. On December 22, 2005 and January 13, 2006, Davol and Bard announced the recall of the Composix Kugel Mesh X-Large patch. Subsequently, in March of 2006, the Defendants announced the recall of the Composix Kugel Mesh Large Patch as well.

39. Under these FDA recalls, the following products were subject to recall:

| | | | |
|---|---|---|---|
| PC#0010206 | Bard Composix Kugel | Extra Large Oval | 8.7” x 10.7” |
| PC#0010207 | Bard Composix Kugel | Extra Large Oval | 10.8” x 13.7” |
| PC#0010208 | Bard Composix Kugel | Extra Large Oval | 7.7” x 9.7” |
| PC#0010209 | Bard Composix Kugel | Large Oval | 6.3” x 12.3” |
| PC#0010202 | Bard Composix Kugel | Large Oval | 5.4” x 7” |
| PC#0010204 | Bard Composix Kugel | Large Circle | 4.5” |

40. Then, on January 10, 2007, Davol and Bard expanded the recall to include all Composix Kugel Mesh Large Oval and Large Circle Mesh patches, as well as all products manufactured from January 2004 to January 2006, that had the same component design as the recalled manufacturing lots.

41. Upon information and belief, it is possible that additional Composix Kugel Mesh Patches will experience the same defects as the currently recalled models and will need to be recalled as well.

42. The FDA conducted the aforementioned EIR investigations in January and February of 2006. Upon information and belief, the results of these investigations determined, among other things, that Defendants:

a. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;

b. misidentified numerous Composix Kugel Mesh Patch complication events;

c. failed to apply the product quality hold and release procedure on a timely basis;

d. failed to properly follow the procedures for conducting design validation review;

e. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Composix Kugel Mesh Patch complications; specifically, they provided no justification for including only the Extra Large Composix Kugel Mesh Patch sizes in the December 2005 recall;

f. failed to provide full information which they knew regarding numerous Composix Kugel Mesh Patch complaints;

g. failed to actually perform strength testing on memory recoil rings for all sizes of Composix Kugel Mesh Patch before putting them into the stream of commerce;

h. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Composix Kugel Mesh Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases;

i. failed to establish and implement procedures to ensure that the device history records for each batch, lot, or unit are maintained to demonstrate that the device is manufactured in accordance with the device master record and the Quality System regulation; and

j. failed to ensure that devices conform to defined user/patient needs and intended uses.

43. Additionally, upon information and belief, the ring break issue with the Composix Kugel Mesh Patch was not brought to the FDA's attention until over *20 months* after Defendants knew of the first death resulting from their products.

44. Despite the serious risk of injury (and even death) resulting from the Composix Kugel Mesh Patch, Defendants took woefully insufficient steps to notify Plaintiffs of the patches' defects.

45. Evidence shows that Defendants held back on implementing a full recall – and actively notifying patients of the recall – until over a year after the first recall was issued. In fact, evidence shows that for a period of time after the recall was issued, Defendants informed doctors that because this was a "voluntary" recall, patients need not be notified at all.

46. Upon information and belief, Defendants claimed during their expanded recall that there had only been 28 reported ring breaks. Many of which were years before the first recall. In actuality, at least 85 ring breaks had been reported. Defendants only told the FDA about the ring breaks which they confirmed by getting the samples returned. Upon information and belief, if the sample was not returned, Defendants minimized the seriousness of the report and intentionally chose not to include the complaint when providing their statistical analysis to the FDA.

47. Upon information and belief, as of January 2007, roughly 100,000 Composix Kugel Mesh Patches had been sold. Upon information and belief, the vast majority of the patches which have been implanted are currently still inside patients residing in the United States.

48. At all times relevant, Defendants were engaged in the design, manufacturing, assembling, distributing, conveying and/or selling of the Composix Kugel Mesh Patch in their ordinary course of business. Defendants designed, manufactured, assembled and sold the devices to hospitals and physicians, knowing that they would be thereby sold to patients who needed hernia repair surgery, including Plaintiffs and all other members of the Class.

49. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' users.

50. Defendants' Composix Kugel Mesh Patches are uniformly defective because they possess the same potential for breakage or malfunction of the memory recoil ring and, as a result, are subject to risk of resulting injury.

51. Defendants did not timely apprise the Plaintiffs, members of the Class, physicians and general public of the defect in their Composix Kugel Mesh Patches, despite Defendants' knowledge that memory recoil rings had failed due to the described defects. Defendants' concealment of a known defect from Plaintiffs and Class members equitably tolls any applicable statutes of limitation. No member of the Class could have discovered the existence of the defect in the implanted Composix Kugel Mesh Patches until Defendants provided notice of the recall.

52. Defendants' conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of the Plaintiffs and the members of the Class.

53. The purpose of Defendants' conduct, directed at patients, physicians and consumers, was to create demand for and sell the Composix Kugel Mesh Patches. Each aspect of Defendants' conduct combined to artificially create sales of the Composix Kugel Mesh Patches.

54. As a direct and proximate cause of cumulative and indivisible nature of Defendants' conduct and the recalled Composix Kugel Mesh Patches, Plaintiffs and the Class have suffered injuries and will require continual medical monitoring and care. Accordingly, Plaintiffs and the Class have incurred and will continue to incur damages related to the recalled Composix Kugel Mesh Patches.

## NAMED PLAINTIFFS' EXPERIENCES

55. Mr. French underwent a hernia repair surgical procedure on May 22, 2004 and, during the course thereof, Mr. French's physician implanted an extra large oval Composix Kugel Mesh Patch into his body. That patch remains in his body to this day. Mr. French meets the definition of a class member set forth in this Complaint.

56. Mr. Earles underwent a hernia repair surgical procedure on October 10, 2002 and, during the course thereof, Ms. Earles' physician implanted an extra large oval Composix Kugel Mesh Patch into his body. That patch remains in his body to this day. Mr. Earles meets the definition of a class member set forth in this Complaint.

57. The Composix Kugel Mesh Patches implanted in Plaintiffs were designed, manufactured, sold and distributed by Defendants, and were intended to be used by surgeons for hernia repair surgeries. Defendants represented these Composix Kugel Mesh Patches to be appropriate and suitable products for such purposes.

58. The Composix Kugel Mesh Patches in Plaintiffs' bodies present a serious ongoing health risk due to its defective design and/or manufacture.

59. As a direct and proximate result of Defendants' defective design, manufacture, function and/or inadequate warnings regarding the Composix Kugel Mesh Patch, Plaintiffs have sustained, and will continue to sustain, injuries and damages, including, but not limited to, medical monitoring by means of increased physician follow-ups, non-invasive medical imaging and screening (such as CT scans, sonograms, and/or ultrasounds), and potential future invasive surgical and exploratory treatments.

## CLASS ACTION ALLEGATIONS

60. Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated, as members of a proposed Tennessee plaintiff class (the "Class")

defined as follows:

> All citizens, residents or domiciliaries of the State of Tennessee who have had a recalled Composix Kugel Mesh Patch implanted into their person, which has not been explanted, and who have not previously filed a claim or lawsuit for personal injury, but will require medical monitoring.

This action is brought and may properly be maintained as a class action pursuant to the provisions of Rule 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

61. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

62. The Class is so numerous that the individual joinder of all its members is impracticable. While the exact number and identification of Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery of Defendants, on information and belief, Defendants have sold roughly 100,000 defective units, and, as such, the Class includes thousands of class members.

63. Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which

may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

a. whether there are design and/or manufacturing defects in the Composix Kugel Mesh Patch;

b. whether Defendants failed to follow U.S. Food & Drug Administration ("FDA") good manufacturing practices, failed to properly investigate manifestations of the Composix Kugel Mesh Patch over the past several years, failed to adequately document reports of the defect, and failed to exercise adequate quality control;

c. whether Defendants' conduct in designing, manufacturing, marketing and monitoring the Composix Kugel Mesh Patch fell below the duty of care owed by Defendants to Plaintiff, Plaintiff's physicians, and Class members;

d. whether Defendants intentionally, knowingly, carelessly, recklessly, or negligently concealed information regarding the existence of a defect in the Composix Kugel Mesh Patch from the FDA, physicians, Plaintiffs' members, and the members of the Class;

e. whether Composix Kugel Mesh Patch listed in the proposed Class definition share a common and inherent design defect that causes them to break, creating a risk of injury or death to patients in whom they were implanted;

f. whether Defendants negligently, recklessly, or intentionally misrepresented the quality and usefulness of the Composix Kugel Mesh Patch;

g. whether Defendants are liable for selling a dangerously defective product;

h. whether the Class has been injured by virtue of the Defendant's deceptive business practices and conduct;

i. whether persons implanted with the Composix Kugel Mesh Patch are at increased risk of developing serious latent injury;

j. whether there exists monitoring and testing procedures which make early detection and treatment of serious injury caused by exposure to the Composix Kugel Mesh Patch possible and beneficial;

k. whether the Class is entitled to injunctive and other equitable relief including restitution and disgorgement and, if so, the nature of such relief;

l. whether the Class is entitled to medical monitoring and treatment, at Defendant's expense; and

m. whether Defendants are liable for punitive or exemplary damages, and if so, the amount necessary and appropriate to punish Defendants for their conduct, to deter others, and to fulfill the other policies and purposes of punitive and compensatory damages.

64. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the members of the Class have suffered similar injury and are facing further damages arising out of Defendants' common course of conduct, as alleged herein. The damages of each Class member were and are caused directly by Defendants' conduct, as alleged herein. Plaintiffs and the members of the Class must prove the same facts in order to establish the same claims, as described herein, which apply to all Class members.

65. Plaintiffs are adequate representatives of the Class because they have been implanted with a Composix Kugel Mesh Patch, have incurred medical costs relating to that device, and will continue to incur related medical expenses. Moreover, Plaintiffs' interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained experienced and competent counsel, and together Plaintiffs and counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of the Class members will fairly and adequately be protected by Plaintiffs and their counsel.

66. A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse, and an inequitable

allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Composix Kugel Mesh Patch claims. By contrast, the Rule 23 class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

67. The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Rule 23(b)(1) and/or (b)(2) because:

a. the prosecution of separate actions by thousands of individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual Class members would also create the risk of adjudication with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not a party to such adjudications and would substantially impair or impede the ability of such non-party Class members to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

68. Plaintiff and the Class are consumers of the defective products and were injured by Defendants' tortuous conduct.

69. Had the Defendants not engaged in the conduct described above, Plaintiff and members of the Class would not have incurred related medical costs, would not continue to incur these costs and would not require medical monitoring of their condition.

70. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff and Class members for the Composix

Kugel Mesh Patches and/or for the costs of replacing the Composix Kugel Mesh Patches that they would not have paid had Defendants not engaged in unfair and deceptive conduct.

**COUNT I**

**(Negligence)**

71. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

72. At all times herein mentioned, Defendants had a duty to exercise reasonable care in the course of its design, manufacture, sale, testing, marketing, advertising, promoting, distribution and warning about the Composix Kugel Mesh Patch. This duty included, among other things, to assure that the products did not cause users to suffer from unreasonable and dangerous side-effects and to warn Plaintiffs and Class members of the defective nature of Defendants' devices. Defendants breached their duty of reasonable care to Plaintiffs and Class members by incorporating a defect into the design of the devices, thereby causing injuries to Plaintiffs and Class members.

73. At all times relevant, Defendants knew, or in the exercise of reasonable care should have known, that the Composix Kugel Mesh Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, and were unreasonably likely to injure the products' users.

74. Defendants so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the aforesaid products, that they were dangerous and unsafe for the use and purpose for which they were intended.

75. Defendants knew, or should have known, that consumers such as Plaintiffs could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care.

76. Defendants breached their duty of reasonable care to Plaintiffs and Class members by manufacturing and assembling the devices in such a manner that they were prone to fail to operate and malfunction and expose Plaintiffs and Class members to injury.

77. Defendants breached their duty of reasonable care to Plaintiffs and Class members by failing to notify Plaintiffs and the Class at the earliest possible date of known design defects in the devices.

78. Defendants breached their duty of reasonable care to Plaintiffs and Class members by failing to exercise due care under the circumstances.

79. As a direct and proximate result of the carelessness and negligence of Defendants, as set forth in the preceding paragraphs, Plaintiffs and Class members have sustained and will continue to sustain damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

80. As a direct and proximate result of Defendants' actions, Plaintiffs and members of the Class have already suffered damages – including the purchase and implantation of defective and dangerous medical devices – and they will be required to pay sums to ascertain the existence, nature and extent of their injuries in the future.

81. Tennessee Common Law permits the establishment of a medical monitoring trust fund.

82. For the reasons stated above, Defendants are liable, jointly and severably, to Plaintiffs and every Class Member for injunctive and equitable relief including periodic medical monitoring.

**COUNT II**

**(Failure to Warn)**

83. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

84. Defendants are manufacturers and/or sellers of the Composix Kugel Mesh Patch.

85. The Composix Kugel Mesh Patches manufactured and/or supplied by Defendants were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have know of the risk of injury from the product, they failed to provide adequate warnings to users or consumers of the product and continued to promote the products aggressively.

86. The Composix Kugel Mesh Patches manufactured and/or supplied by Defendants were unaccompanied by proper warnings regarding all possible adverse side-effects or results associated with the design, manufacturing, implantation and/or use of the Composix Kugel Mesh Patch.

87. Defendants failed to warn the FDA of material facts regarding the safety and efficacy of the Composix Kugel Mesh Patch, such that this medical device would never have been approved, and no physician would have been able to use them as a hernia repair tool in the United States.

88. Defendants failed to warn consumers and physicians of material facts regarding the safety and efficacy of the Composix Kugel Mesh Patch

89. Defendants failed to perform adequate testing. Adequate testing would have shown that the Composix Kugel Mesh Patches possess design and manufacturing flaws resulting

in serious potential side effects and health risks. Full and proper warnings with respect to these results should have been made.

90. As the producing cause and legal result of the defective condition of the Composix Kugel Mesh Patch as manufactured and/or supplied by Defendants, and as a direct and proximate result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein:

a. Plaintiffs and the Class have suffered a significantly increased risk of contracting a serious latent injury;

b. Plaintiffs and the Class have sustained economic loss including purchase price, the cost of medical tests and services, hospital costs, and other costs incidental to the implantation and monitoring of a harmful and defective product into their bodies; and

c. Plaintiffs and the Class require reasonable and necessary health care, attention and services to test for and monitor the onset of serious injury resulting from Defendants' product.

## COUNT III

### (Defective Design)

91. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

92. The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective in design or manufacturing in that, when they left the hands of the manufacturer and/or supplier, they were unreasonably dangerous because they were more dangerous than an ordinary consumer would expect and more dangerous than other methods of hernia repair.

93. Alternatively, the Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective in design or manufacturing in that, when they left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design.

94. The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective due to inadequate warning or instruction because Defendants knew or should have known that the product created a risk of harm to consumers and Defendants failed to adequately warn of those risks.

95. The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective due to inadequate testing.

96 The Composix Kugel Mesh Patches manufactured and/or sold by Defendants were defective due to inadequate post-marketing warning or instruction because, after the manufacturer knew or should have known that the product created a risk of harm to consumers, Defendants failed to adequately warn of those risks and continued to promote the product.

97. As the producing cause and legal result of the defective condition of the Composix Kugel Mesh Patch as manufactured and/or supplied by Defendants, and as a direct and proximate result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein:

a. Plaintiffs and the Class have suffered a significantly increased risk of contracting a serious latent injury;

b. Plaintiffs and the Class have sustained economic loss including purchase price, the cost of medical tests and services, hospital costs, and

other costs incidental to the implantation and monitoring of a harmful and defective product into their bodies; and

c. Plaintiffs and the Class require reasonable and necessary health care, attention and services to test for and monitor the onset of serious injury resulting from Defendants' product.

**COUNT IV**

**(Unjust Enrichment)**

98. Plaintiffs re-allege and incorporate by reference each and every allegation contained in this Complaint as though fully set forth herein.

99. Defendants have financially benefited and been enriched by the unlawful and inequitable conduct alleged herein. Defendants have reaped enormous benefits and profits from consumers as a result of the sale of these defective and unreasonably dangerous devises.

100. Defendants have knowledge of this benefit.

101. Defendants have voluntarily accepted and retained this benefit, to the economic detriment of Plaintiffs and the Class.

102. The circumstances, described herein, are such that it would be inequitable for Defendants to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class.

103. Plaintiffs and the Class are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair and inequitable conduct in manufacturing, marketing, promoting and selling its Composix Kugel Mesh Patch products.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

104. For an Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Rule 23, and appointing Plaintiffs and their counsel to represent the Class;

105. For an Order establishing a medical monitoring program with a trust fund that is funded by Defendants, to provide medical testing, screening, services, research and education and a medical/legal registry to ensure that the Class members receive prompt and proper medical treatment;

106. For punitive or exemplary damages against Defendants where appropriate, in an amount sufficient to punish Defendants and deter others from similar wrongdoing;

107. For all applicable statutory damages under the consumer protection legislation;

108. For an award of treble damages where appropriate;

109. For an award of attorneys' fees and costs;

110. For prejudgment interest and the costs of suit; and

111. For such other and further relief as this court may deem just and proper.

**JURY DEMAND**

Plaintiffs on behalf of themselves and all others similarly situated, hereby demand a trial by jury in this case.

Dated: March ___, 2008

_________________________________
David High, Esq.
LAW OFFICES OF DAVID HIGH

300 James Robertson Parkway, 2nd Floor
Nashville, Tennessee 37201
615-216-1000
615-216-1009

______________________________
Ernest Cory
Jon C. Conlin
Stephen Hunt
CORY WATSON CROWDER & DEGARIS
2131 Magnolia Avenue
Birmingham, Alabama 35205
205-328-2200
205-324-7896